**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**DE'AMONTAE MANNING,**

Plaintiff,

v.

**JOSHUA MULINIX,**

Defendant.

CASE NO. 3:24 CV 1171

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Currently pending before the Court in this civil rights case is Defendant Joshua Mulinix's Motion for Summary Judgment. (Doc. 27). *Pro se* Plaintiff De'Amontae Manning opposes. (Doc. 35).[1] Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons set forth below, the Court grants Defendant's Motion.

## BACKGROUND

This suit arises out of Defendant's use of a chemical agent against Plaintiff in his cell on April 21, 2023, while he was housed at Toledo Correctional Institution.

Leading up to the incident at issue, while Plaintiff was in the shower, he "made numerous requests for [his] Ramadan meal." (Doc. 1, at 6).[2] The "unit correctional officers" ignored him and requested he exit the shower before they would contact a supervisor. *Id.* At that point, the

---

1. Defendant did not file a Reply brief and the time in which to do so has expired. *See* Loc. Civ. R. 7.1(e).
2. Because Plaintiff's Complaint is verified, *see* Doc. 1, at 25, it serves as an Affidavit for purposes of summary judgment. *El Bel v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). The Court has modified the capitalization in quotations from Plaintiff's filings for ease of readability.

"negotiating officers" arrived; Plaintiff also informed them he did not receive his Ramadan meals. *Id.*

Due to Plaintiff's refusal to exit the shower despite orders to do so, a procedure called "Planned Use of Force" was triggered. (Doc. 27-2, at 1). This is a "supervisor-led procedure" used in an attempt to deescalate when a prisoner refuses to move or threatens staff. *Id.* It involves beginning with negotiation and verbal warnings—including an explanation of consequence—and escalating to non-lethal options to gain compliance, including the use of chemical agents. *Id.* at 1-2. If unsuccessful, the supervisor then directs a physical extraction of the prisoner. *Id.* at 2. This process is designed to gain compliance with the least force possible. *Id.*

Defendant and another officer entered the shower area and requested Plaintiff "to cuff up." (Doc. 1, at 7). Plaintiff "made repeated attempts to proclaim that [he] did not receive [his] religious meals before [he] allowed" Defendant to handcuff him. *Id.*; *see also* UOF Video 7:44-8:16.[3]

Plaintiff states that "in a non-aggressive manner, for peaceful protest, [he] attempted to sit on the floor" and again request the meals. (Doc. 1, at 7). On the walk from the shower to Plaintiff's cell, at "several times he stopped walking willingly" and, at other times, "he refused to hold up his bodyweight." (Doc. 27-2, at 2). This is depicted on videos submitted by Defendant that show Plaintiff turning, twisting, kneeling, and resisting the escort. *See* UOF Video 8:35-9:50; Butts Video 2:36-3:46.

Plaintiff states that when he arrived at his cell, he "walked inside . . . and allowed [his] cell door to be secured." (Doc. 1, at 7). This is directly contradicted by the submitted videos,

3. Defendant submitted multiple video exhibits depicting the incident. The Court herein refers to two of these videos which are entitled PLANNED_UOF_CAMERA.mp4 ("UOF Video"), and BUTTS,_OJAY.mp4 ("Butts Video").

which depict the officers struggling for over a minute to get Plaintiff inside his cell and to fully close Plaintiff's cell door. (UOF Video 9:30-10:44; Butts Video 3:26-4:35).[4] Officer O'Jay Butts accompanied Defendant to the cell and controlled the pepper ball gun. (Doc. 27-2, at 2); *see also generally* Butts Video.

Shortly after the door is closed, Defendant directs Plaintiff to "uncuff" and Plaintiff responds, "I ain't uncuffing shit." (UOF Video 10:43-:49).[5] Defendant responds with, "Final directive, uncuff," and repeatedly instructs Plaintiff to uncuff for the next approximately thirty seconds. (UOF Video 10:49-11:24). During this time, Plaintiff repeatedly requests to see medical, complaining that his foot is bleeding from being shut in the door. Defendant tells Plaintiff he will get him medical attention, but needs him to uncuff first. *See id.* When Plaintiff does not follow the instruction to uncuff, Defendant orders Officer Butts to deploy a pepper ball. (UOF Video 11:24-:25).[6] Defendant continues to give Plaintiff repeated instructions to uncuff, including stating "final directive" multiple times. (UOF Video 11:36-12:57). After another statement of "final directive, uncuff," Defendant directs Butts to "saturate the area" and Butts shoots four pepper balls into Plaintiff's cell. (UOF Video 12:14-:15; Butts Video 6:20-:23); *see also* Doc. 27-2, at 2 (Officer Butts's statement that he deployed the pepper ball system at Defendant's request). Plaintiff can be heard saying "now I can't breathe." (UOF Video 12:27-:29). Defendant continues to give Plaintiff instructions and "final directive[s]" to uncuff. (UOF

4. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Regardless, any dispute about how Plaintiff got into his cell is not dispositive of the claims decided herein, which are based solely on actions taken once Plaintiff was inside the cell.
5. For a prisoner to "uncuff", he must back up toward his cell door and place his hands through the cuff port so they can be removed by a correctional officer. *See* Doc. 27-2, at 2.
6. It is not entirely clear from the video, but it appears this first attempt to deploy pepper balls was unsuccessful.

Video 12:29-:46). He then instructs Butts to direct a pepper ball near Plaintiff's legs and Butts does so. (UOF Video 12:45-:52; Butts Video 6:55-:59); *see also* Doc. 27-2, at 2. Following this, Plaintiff put his hands through the cuff port and permitted Defendant to uncuff him. (UOF Video, 12:57-13:09; Butts Video 7:00-7:15).

Officer Butts avers that the amount of chemical agent used "was a typical amount for the circumstance." (Doc. 27-2, at 2). He further states that permitting Plaintiff to retain the handcuffs would have presented a danger to other prisoners. *Id.*

After he was uncuffed, Plaintiff "attempted to request for [his] cell to be decontaminated." (Doc. 1, at 12). Defendant "intentionally and deliberately, [and] blatantly ran away with the assisting officer." *Id.* The videos depict Defendant and other officers walking away from Plaintiff's cell after he is uncuffed. (UOF Video 13:26-13:46; Butts Video 7:33-53).

Plaintiff says he remained inside the same cell until April 25, 2023, and suffered suffocation, migraines, dizziness, blurry vision, and runny nose. (Doc. 1, at 8).

Less than 30 minutes after the chemical agent was used, Michael Mathews, R.N., examined Plaintiff from the front of his cell. (Doc. 27-3, at 1) (stating he "verbally addressed and examined Manning from his cell front").[7] Mathews observed Plaintiff "showed no signs of trauma or injury, his respiration was even and not labored, he was speaking in complete sentences without difficulty, and he showed no acute medical distress of any kind." *Id.*; *see also* Doc. 27-1, at 19-21 (medical examination report). Mathews therefore determined Plaintiff was "safe to remain [in] his restrictive housing." (Doc. 27-3).

---

7. The videos depict the pepper ball system was used at approximately 9:47 p.m. Nurse Mathews's examination report was completed at 10:17 p.m. and he states he examined Plaintiff "some time before 10:17 p.m." (Doc. 27-3, at 1).

Plaintiff's cell "was equipped with air ventilation . . . and running water" and officers ensured the "ventilation system in [Plaintiff's] cell was functioning and would decontaminate the area." (Doc. 27-2, at 2-3). The "proper method for decontaminating a cell that ha[s] been saturated with the pepper ball agent is to allow the area to naturally be ventilated" and "[i]f there is a residue, then [prisoners] can also use water to clean up the area." *Id.* at 2.

In his Complaint, Plaintiff lists a single legal claim, which he describes as: "Forcing me to remain inside a ma[c]e contaminated cell is inhumane and violates Plaintiff['s] . . rights and constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution." (Doc. 1, at 8). Elsewhere he describes his claim as "[Defendant] enforced for me to be ma[c]ed while inside my cell and intentionally and deliberately left me inside a ma[c]e contaminated cell without allowing me to decontaminate and have my cell decontaminated." *Id.* at 4, 10.[8]

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any factual matter in dispute; the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

---

8. Plaintiff attaches extra pages to his Complaint such that this statement of his claim begins on ECF page 4 and continues on ECF page 10.

The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

## DISCUSSION

Defendant contends he is entitled to qualified immunity and summary judgment because Plaintiff cannot establish a constitutional violation much less a clearly established constitutional violation. (Doc. 27). For the reasons set forth below, the Court agrees.

To state a claim under 42 U.S.C. § 1983, a plaintiff must identify the deprivation of a right secured by the federal Constitution or laws of the United States and demonstrate such deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Plaintiff brings his claims under the Eighth Amendment.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Supreme Court has long held that the Fourteenth Amendment incorporates the Eighth Amendment's ban on "cruel and unusual punishments" against the States. *See Robinson v. California*, 370 U.S. 660, 666-67 (1962). The Court has also long held that this ban does not just

cover the formal "punishment" that a state court metes out to criminal defendants. The Eighth Amendment thus regulates, *inter alia*, informal harms that prison officials inflict on convicted prisoners during their terms of incarceration, including the force that prison guards use on prisoners, *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (holding the Eighth Amendment prohibits the "unnecessary and wanton infliction of pain on prisoners"), and the conditions of prisoners' confinement, *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (holding prison officials have a duty to provide "humane conditions of confinement").

Plaintiff brings two claims here – one regarding the use of the chemical agent and one regarding the failure to decontaminate his cell. The first of these is properly analyzed as an excessive force claim, while the latter is a conditions of confinement claim. The Court addresses each below.

*Use of Chemical Agent*

Defendant contends he is entitled to qualified immunity and summary judgment because Plaintiff fails to establish an Eighth Amendment violation based on the use of the pepper ball The Court agrees that Plaintiff has not established a question of fact regarding the subjective component of his Eighth Amendment excessive force claim.

The "unnecessary and wanton infliction of pain" requirement "has objective and subjective components, both of which follow from the Eighth Amendment's text." *Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023).

> Objectively, harm to a prisoner must rise to a sufficiently serious level because the Eighth Amendment prohibits only "cruel and unusual" deprivations, not just uncomfortable or "even harsh" ones. *Rhodes*, 452 U.S. at 347, 101 S.Ct. 2392; *see Phillips*, 14 F.4th at 534. Subjectively, harm to a prisoner must result from a prison official's sufficiently volitional actions because the Eighth Amendment bars only willful conduct that "inflict[s]" "punishment," not accidental conduct that causes injury. *See Phillips*, 14 F.4th at 535 (citing *Wilson v. Seiter*, 501 U.S. 294, 300, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

*Id.*

"As a subjective matter . . . prisoners who challenge a correctional officer's use of force must prove more than that the officer acted with 'deliberate indifference' to whether the force was necessary (the type of intent that prisoners must prove to challenge their conditions of confinement or medical care)." *Id.* at 616 (citing *Hudson v. McMillian*, 503 U.S. 1, 5-6 (1992)). "The Court has instead described the 'core judicial inquiry' in this use-of-force context as distinguishing between force used in a 'good-faith effort to maintain or restore discipline' and force used 'maliciously and sadistically to cause harm.'" *Id.* (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam)); *see also Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). "Only the latter kind of force—force exerted maliciously and sadistically to inflict pain—violates the Eighth Amendment." *Johnson*, 79 F.4th at 616. "So even if an officer uses force because of an 'unreasonable' belief that it is necessary to restrain a prisoner, the officer does not violate the Eighth Amendment." *Id.* (quoting *Whitley*, 475 U.S. at 324). The Eighth Amendment "necessarily excludes from constitutional recognition *de minimis* uses of physical force" so long as the use of force is not the type of force that would be "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327). "The negligent use of force—even the reckless use of force—does not establish an Eighth Amendment claim; [the plaintiff] must prove the malicious use of force for the exclusive purpose to inflict pain." *Johnson*, 79 F.4th at 621.

> To decide whether a jury could find that an officer acted with this malicious intent, the Supreme Court has identified several factors to consider: What was the extent of the prisoner's injury? What was the nature of the threat that justified the use of force? Was the amount of force proportional to the threat? And did the officer take any actions designed to reduce the required amount of force?

*Id.* at 618. Courts also approach such claims with deference to avoid "unreasonable *post hoc* judicial second-guessing" of officers' conduct. *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008) (quoting *Parrish v. Johnson*, 800 F.2d 600, 605 (6th Cir. 1986)); *see also Johnson*, 79 F.4th at 618 ("[W]hile judges may review an encounter by slowing down, pausing, and replaying a video, officers have no such luxury. They must make quick decisions in the heat of the moment.").

On review of the evidence presented in accordance with the above guidance, the Court finds Plaintiff has not established a genuine issue of material fact regarding the subjective component of his Eighth Amendment excessive force claim. Even in the light most favorable to Plaintiff, the evidence shows only the former here. Plaintiff was given repeated orders to present his hands to be uncuffed and he did not do so. The pepper balls were only deployed after Plaintiff failed repeatedly to comply with the officers' orders and officers paused between the first and second deployments to continue negotiations and allow Plaintiff time to comply.

Again, force "used in a 'good faith effort to maintain or restore discipline'" does not violate constitutional principles. *Johnson*, 79 F.4th at 616 (quoting *Wilkins*, 559 U.S. at 37). "Only . . . force exerted maliciously and sadistically to inflict pain—violates the Eighth Amendment." *Id.* The use of the pepper balls on the facts presented here does not rise to the level of the latter. *See Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) ("The defendant corrections officers did not violate Jennings's Eighth Amendment rights because the force used was applied in a good-faith effort to maintain or restore discipline, not to maliciously cause pain. The videotape squarely demonstrates that Jennings disobeyed repeated direct orders prior to the use of pepper spray.") (citation omitted); *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) ("We found no Eighth Amendment violation where a prisoner was sprayed with pepper spray

after repeatedly disobeying orders to exit the shower. Indeed, in numerous other cases we have likewise concluded that the use of chemical agents against recalcitrant prisoners did not violate the Eighth Amendment.") (citation modified).

No reasonable fact-finder could conclude that the use of the pepper ball deployment system against a defiant and recalcitrant prisoner such as Plaintiff violated the Eighth Amendment. Plaintiff has thus not established a constitutional violation, much less a clearly established constitutional violation.

*Failure to Decontaminate Cell*

Defendant also argues Plaintiff's claims regarding the alleged failure to decontaminate his cell fail for two independent reasons. First, Defendant contends Plaintiff made no specific claim against him regarding cell decontamination. (Doc. 27, at 8-9). Second, he contends that even if Plaintiff had brought such a claim, there was no constitutional violation. *Id.* at 9.

"To establish a § 1983 . . . claim against a public official in his personal capacity, a plaintiff must show that the official either actively participated in the alleged unconstitutional conduct or implicitly authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct of an offending subordinate." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015)) (citation modified); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Under the Eighth Amendment, prison officials have a duty to provide "humane conditions of confinement." *Farmer*, 511 U.S. at 832. "[A] prison official's deliberate indifference to conditions that pose a substantial risk to an inmate's health and safety violates the Eighth Amendment." *Finley v. Huss*, 102 F.4th 789, 805 (6th Cir. 2024). There is both an

objective and subjective component for such a claim. *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). To satisfy the objective component, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. The subjective component requires that the prison official act with a "sufficiently culpable state of mind." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). That is, the officer must "know[] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837.

Plaintiff's Verified Complaint states that after he was uncuffed he "attempted to request for [his] cell to be decontaminated." (Doc. 1, at 12). This is at least arguably enough to allege Defendant's personal involvement in Plaintiff's prison conditions claim. Nevertheless, as with his excessive force claim, Plaintiff has presented no evidence to satisfy the subjective component of such a claim. The evidence before the Court demonstrates Plaintiff's cell "was equipped with air ventilation . . . and running water," officers ensured the "ventilation system in [Plaintiff's] cell was functioning and would decontaminate the area," the "proper method for decontaminating a cell that ha[s] been saturated with the pepper ball agent is to allow the area to naturally be ventilated" and "[i]f there is residue, then [prisoners] can also use water to clean up the area." (Doc. 27-2, at 2). Plaintiff has identified no evidence to the contrary. The video evidence shows Defendant stated medical would be called. (Butts Video 7:59-8:03). Plaintiff was provided with prompt medical attention and Nurse Mathews found Plaintiff was not in distress and was "safe to remain in his restrictive housing." (Doc. 27-3, at 1). Moreover, beyond Plaintiff's statement that he attempted to request decontamination from Defendant, he has pointed to no evidence Defendant was involved in any subsequent decisionmaking regarding where Plaintiff would be housed. Nor does Plaintiff demonstrate Defendant was aware of any particular injury he had suffered (or would suffer) if not moved.

There is simply no evidence from which a jury could conclude that Defendant was subjectively aware of, and disregarded, any excessive risk to Plaintiff's health or safety. Defendant is therefore entitled to summary judgment on Plaintiff's claim regarding the conditions in his cell after deployment of the chemical agent.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion for Summary Judgment (Doc. 27) be, and the same hereby is, GRANTED; and it is

FURTHER CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: August 21, 2026